DISSENTING OPINION
Laura Denvir Stith, Judge
I respectfully dissent from the principal opinion’s holding that the trial court did not err in excluding the testimony of Ms. Little. The principal opinion basically says that, because Ms. Little did not ob *536 serve the beginning of the police encounter with Mr. Taylor, her testimony has no relevance either as direct evidence or for impeachment purposes. That is just incorrect.
The police officers testified that they saw Mr. Taylor was alone on the street looking into parked vehicles. They said he ran when they walked toward him, removed a baggie from his waistband, and tossed it into a fenced yard as he ran. The police officers testified that they recovered the baggie and that it contained crack cocaine. They further testified that they put Mr. Taylor on the ground and handcuffed him, put him in the patrol car, went back into the fenced yard but did not see any other drugs, and checked vehicles to see if any had been broken into, but none had been. They finally testified it was only as they were checking Mr. Ford’s car, the door of which was open, that Mr. Ford came out of his house across the street and approached the vehicle and gave police permission to search his car.
The prosecution apparently thought this entire series of events was relevant, including the portion of the events that occurred prior to the police officers’ chase of Mr. Taylor as well as the events that occurred after the police officers handcuffed and arrested him and recovered the baggie of crack cocaine. Surely the principal opinion is not stating that the trial court should have excluded this evidence as irrelevant or immaterial because it did not concern the arrest and discovery of the baggie itself. Indeed, it would have been an abuse of discretion for the trial court to prevent the prosecutor from questioning the police officers about the precursor to and remainder of their encounter with Mr. Taylor once they arrested him. The jury would be curious as to the entire circumstances of the arrest, and providing that information would give the jury a better understanding of what occurred.[1] But if it was relevant and material evidence for the prosecution to introduce, then it was relevant and material evidence for the defense to present testimony of a witness who says that different facts led up to and followed the defendant’s arrest. Accordingly, it was an abuse of discretion not to allow Ms. Little to testify to what she saw and heard prior to and after the arrest. The res gestae does not shrink in size once the prosecution rests, nor do different rules of admissibility and relevance apply to the prosecution and the defense.
The evidence also was relevant for purposes of impeachment. The defense offered by Mr. Taylor was that he was not looking into cars, that he did not have or throw a bag of cocaine, and that the baggie containing crack cocaine was planted by the police. Defense counsel, therefore, sought to impeach the officers’ testimony by presenting a witness, Ms. Little, who would testify that Mr. Taylor was not the only one on the street when the police officers began chasing Mr. Taylor; her husband, Mr. Ford, was outside when she heard the commotion that accompanied Mr. Taylor’s arrest. Ms. Little would have testified that the police officers were shouting at Mr. Taylor about a gun or weapon even though he had none. And she would have testified that the police *537 took her cell phone when she tried to take video of them after the arrest.
None of this, the principal opinion says, is relevant and the defense had no right to impeach the officers’ testimony about these events surrounding the arrest of Mr. Taylor. Those events, the principal opinion says, citing Mitchell v. Kardesch, 313 S.W.3d 667, 675 (Mo. banc 2010), are just collateral matters that do not impact on the police version of events or the credibility of the police officers’ testimony. Moreover, the principal opinion says, it has considered the offered testimony and, in its view, it was “not very probative” and so could be excluded. In other words, once the actual arrest is testified to, a police witness can testify to what occurred next without fear of being impeached because the impeachment evidence will be excluded as being collateral.
That just is not and should not be the law. Ms. Little’s testimony, if believed, would have called into question the police officers’ testimony of the circumstances surrounding their encounter with Mr. Taylor. The jury might well agree with the majority of this Court that this evidence is not very probative of credibility and, instead, may believe the police version of events — but that is an issue for the jury, not for this Court.
That is why Mitchell itself held that credibility always is central and probative and that it is error to exclude evidence that goes to the credibility of testimony relevant to the case. “Cross-examination may be had on issues relevant to the witness’s character for truth and veracity regardless of whether the subject of the 'falsehood is material.” Mitchell, 313 S.W.3d at 679. In Mitchell, evidence that the defendant had falsely answered interrogatories in that very case was relevant to his credibility when testifying at trial, even though the subject of the falsehood otherwise would have been collateral. This Court, therefore, held that the trial court erred in excluding “extrinsic evidence to impeach a witness ... regardless of whether the subject of the extrinsic evidence is independently material to the case.” Id. at 679, 682.
Similarly, here, evidence that the officers allegedly inaccurately described the circumstances under which they first saw Mr. Taylor and the circumstances after his arrest is relevant and material to their credibility when testifying to the circumstances of his arrest. It does not matter whether it is important in itself that Mr. Ford was or was not outside, which is the basis of the principal opinion’s determination that exclusion of this evidence was not error. Rather, here, as in Mitchell, it is the alleged falsity of the testimony about the events that led up to. the arrest, and later the events at the conclusion of the arrest, that makes this evidence relevant, material and admissible regardless of whether the subject of the falsehoods otherwise is central to the case.
Evidence from Ms. Little that contradicts that of the officers as to the events leading up to and following the arrest of Mr. Taylor, if believed by the jury, casts doubt on the officers’ testimony about the arrest itself. Mr. Taylor wanted to use this evidence to argue to the jury that if the officers’ testimony was not believable as to these aspects of the arrest, the officers’ testimony about seeing Mr. Taylor throw the bag of crack cocaine also should not be believed. The jury certainly was free to reject this argument, but it should have had an opportunity to hear and weigh the evidence supporting it.
For these reasons, -I respectfully dissent.

. If the principal opinion is stating that it was error to allow the police to testify to the events leading up to and following the arrest as part of the res gestae, then under the doctrine of “curative admissibility,” the defense should also have been entitled to put on evidence about these events. "The curative admissibility doctrine applies when one party introduces inadmissible evidence and allows the opposing party to introduce otherwise inadmissible evidence to rebut or explain inferences raised by the first party's evidence.” State v. Taylor, 298 S.W.3d 482, 493 (Mo. banc 2009).